IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

R. J. REYNOLDS TOBACCO
COMPANY,

      Appellant,

v.

JANICE L. SIKES, AS
PERSONAL REPRESENTATIVE
FOR THE ESTATE OF JIMMIE
WAYNE SIKES,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-3183

Opinion filed April 12, 2016.

An appeal from the Circuit Court for Duval County.
Russell L. Healey, Judge.

Gregory G. Katsas of Jones Day, Washington, D.C., and Robert B. Parrish of
Moseley, Prichard, Parrish, Knight, & Jones, Jacksonville, for Appellant.

John S. Mills of The Mills Firm, P.A., Tallahassee, and John S. Kalil of John S.
Kalil, P.A., Jacksonville, for Appellee.


ON MOTION FOR REVIEW OF STAY ORDER

OSTERHAUS, J.

      R.J. Reynolds Tobacco Company seeks review of a circuit court order denying

its motion to stay execution of an Engle-related judgment while it considers whether

to file a petition for review in the United States Supreme Court. The rules of the United States Supreme Court give petitioners ninety days from the date of the order below (until May 2, 2016 in this case) to file a petition. And Reynolds argues that section 569.23(3), Florida Statutes—a provision addressing bonding requirements in tobacco cases involving signatories to the State's 1997 tobacco settlement agreement—entitles it to receive an automatic stay of execution of the judgment until either the United States Supreme Court reviews the case, or Reynolds decides not to file a petition. We agree that the trial court should have entered the automatic stay while Reynolds exercises its right to seek further review, and that the statute has suspended the finality of the judgment for purposes of execution until all reviews are completed, "including reviews by the Florida Supreme Court." § 569.23(3)(b) & (c), Fla. Stat.

I.

As a member of the class approved by Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006), appellee Ms. Janice L. Sikes, as personal representative of the estate of Jimmie Wayne Sikes, obtained a $5.5 million judgment in state court against Reynolds in June 2013. Reynolds appealed and posted a $5 million bond as required by the statute to receive an automatic stay of execution during its appeals to this court and the Florida Supreme Court. See § 569.23(3)(a)1, Fla. Stat. These

state appeals ran their course when the Florida Supreme Court declined jurisdiction on February 2, 2016.

At that point, the parties began disputing the parameters under which the stay of execution could remain in place under § 569.23(3), while Reynolds considered filing for United States Supreme Court review. Three days after the Florida Supreme Court denied review of Reynolds' state court appeal, Ms. Sikes' counsel told Reynolds that the judgment was "now subject to execution" and that she intended to execute on the judgment unless Reynolds filed a petition for review in the United States Supreme Court within ten days. Ms. Sikes offered to voluntarily refrain from executing if Reynolds filed a motion contesting the stay issue before February 15, 2016. Reynolds then filed a motion under § 569.23(3)(b), Florida Statutes, to confirm the automatic stay in the trial court. Reynolds also increased its bond to more than $5.5 million as required to stay execution while seeking United States Supreme Court review. See § 569.23(3)(b)2, Fla. Stat. But after a hearing on the motion, the trial court denied the automatic stay. It agreed with Ms. Sikes that Reynolds could avoid execution of the judgment only by immediately filing a petition for writ of certiorari in the United States Supreme Court. Reynolds then filed an emergency motion for stay in this court, which we treat as seeking review of the trial court's denial of a stay pursuant to rule 9.310(f), Florida Rules of Appellate Procedure. See Lambert-Sacher v. Sacher, 120 So. 3d 667, 668 (Fla. 1st DCA 2013).

3

## II.

Whether an automatic stay must be entered under the circumstances presented in this case presents a question of law that we review de novo. Section 569.23(3) sets forth the terms by which tobacco settlement signatories like Reynolds can stay the execution of <u>Engle</u>-related judgments. <u>See</u> <u>R.J. Reynolds Tobacco Co. v. Hall</u>, 67 So. 3d 1084, 1087-89) (Fla. 1st DCA 2011) (detailing the history and purpose underlying § 569.23). For both state and federal appeals and reviews, appellants can trigger a stay after satisfying specific, statute-defined bonding requirements. Paragraph (3)(a)1 addresses post-trial appeals or reviews *in state court* by providing that:

> the trial courts shall automatically stay the execution of any judgment in any such actions during the pendency of all appeals or discretionary appellate reviews of such judgments in Florida courts, upon provision of security as required in this paragraph.

A parallel requirement in paragraph (3)(b)1 applies to appeals or reviews *outside of Florida's courts*, "including a review by the United States Supreme Court":

> if there is no appeal or discretionary appellate review pending in a Florida court and an appellant <u>exercises its right to seek discretionary appellate review</u> outside of Florida courts, <u>including a review by the United States Supreme Court</u>, the trial court shall automatically stay the execution of the judgment in any such action during the pendency of the appeal, upon provision of security as required in this paragraph.

4

(Emphasis added). Section 569.23(3)(c) follows up on these provisions by protecting the bond from a plaintiff's claims until thirty days after completion of all appeals or reviews:

> A claim may not be made against the security provided by an appellant unless an appellant fails to pay a judgment in a case covered by this subsection within 30 days after the judgment becomes final. For purposes of this subsection, a judgment is "final" following the completion of all appeals or discretionary appellate reviews, including reviews by the United States Supreme Court.

(Emphasis added.)

The central question in this case is what act is required under § 569.23(3)(b)1 for an appellant to demonstrate that it is "exercis[ing] its right to seek . . . review by the United States Supreme Court," thus qualifying to receive the automatic stay. Trial courts have answered the question in different ways, but it's a novel appellate issue. According to Ms. Sikes and the trial court's order, the statute permits execution on the judgment right away until Reynolds actually files a petition for writ of certiorari in the United States Supreme Court. Hence, she contacted Reynolds three days after the Florida Supreme Court denied review seeking to execute. Her interpretation reads gaps into § 569.23(3)'s bonding and stay regime, so that when a court reaches a result, and prior to the filing of a notice of appeal or review in the next court, a plaintiff can quickly move to execute on the judgment. For appellants seeking further review and to retain the stay's protection, her interpretation strips the time normally allowed under the rules to file an appeal or review petition—typically

5

30 days in state court and 90 days in the United States Supreme Court. And it precipitates a million-dollar race to the sheriff's office in cases like this one, wherein an appellee can rush to execute on a judgment before the appellant can get its petition filed in Washington, D.C.

Underlying Ms. Sikes' argument is a fairness argument that Reynolds should not receive the benefit of 90-day stay under United States Supreme Court rules for filing a petition if it does not ultimately file a petition. But in this case, we recognize that Reynolds has taken steps prescribed in the statute demonstrating that it is exercising its right to seek further review. First, Reynolds has satisfied the statute's bonding requirement for seeking United States Supreme Court review. Just as Reynolds previously posted a $5 million supersedeas bond into the registry of the Florida Supreme Court in order to stay execution while taking state court appeals, see § 569.23(3)(a)2, it has now increased the amount of the bond to $5.5 million as required in § 569.23(3)(b)2 to extend the stay pending review by the United States Supreme Court. Reynolds added to the bond after the Florida Supreme Court's decision, setting it at the full amount of the judgment as required by the statute. The only reasonable interpretation of its decision to increase the bond to the exact amount required for seeking further review is that it was exercising its right to seek further review in the United States Supreme Court under § 569.23(3)(b)1.

6

Second, Reynolds confirmed that it was exercising its right to seek further review by asking the trial court to confirm the automatic stay. It told the trial court at a hearing held just 17 days after the Florida Supreme Court's decision denying review that it was considering filing a petition. The rules afford a ninety-day period within which Reynolds will have to make its *final* decision on filing a petition. And while Reynolds' ultimate decision isn't yet known, what we do know is that Reynolds has already taken steps short of filing the petition demonstrating that it is exercising its right to seek further review. For now, it has done all that is required to trigger the automatic stay.

Reynolds didn't also need to file a petition instantaneously in the United States Supreme Court in order to protect its $5.5 million bond and other assets from immediate execution. We do not interpret "exercises" in the statute in the same way as Ms. Sikes does in arguing that Reynolds must "simply file a petition for certiorari once state appellate review ends" to maintain the stay. In fact, filing a petition for writ of certiorari in the United States Supreme Court is not very simple. It's not like, for instance, filing a bare bones, two- or three-sentence notice of appeal in a state court. Rather, exercising the right to seek United States Supreme Court review involves demanding work even before the petition gets filed. See Sup. Ct. R. 10, 12-14, 33, & 34. Chief among these requirements is that the petition must state a comprehensive, effective argument right from the start. The rules state that a petition

must include "[a]ll contentions in support of the petition" and "will be granted only for compelling reasons." Id. R. 10, 14. The format for filing in the United States Supreme Court adds to the complexity. Petitions must be drafted, printed, and bound in a specific, high-quality format, accompanied by an appendix containing all the opinions, orders, findings of fact, conclusions of law entered in the case by a court or agency, and any other relevant opinions, orders, etc. in the very same format. Id. R. 33, 34. The rules of the United States Supreme Court give petitioners 90 days to complete the work reflecting the challenge of weighing whether any issues emanating from a previous decision merit high court review, reducing issues into a compelling argument worthy of the court's exercise of discretion, conforming a draft petition and all other required documents to the format required by the court for printing and binding, and, finally, filing the petition. Id. R. 13. The rules warn would-be petitioners that rash work will sound the death knell. See Id. R. 14(i)4 ("The failure of a petitioner to present with accuracy, brevity, and clarity whatever is essential to ready and adequate understanding of the points requiring consideration is sufficient reason for the Court to deny a petition."). These filing requirements belie the short shrift Appellant's argument gives to "simply" filing a petition in the United States Supreme Court. They also reveal that exercising the right to seek Supreme Court review involves a process that originates long before the petition actually gets filed. It doesn't make sense that the Legislature intended to pressure defendants into

8

forsaking the usual certiorari period by rushing to compile a hasty petition in a fraction of the time allowed by the United States Supreme Court. And that Reynolds was still considering whether to file a petition and hadn't yet made a final decision only 17 days into the 90-day period isn't particularly remarkable.

Adopting Ms. Sikes' interpretation of "exercises" would also thwart the statute's detailed provision bonding and stay regime. We've discussed before the history and significant state purpose underlying the adoption of §569.23(3)'s regime, which prevents the disruptive effect of adverse judgments while appeals and discretionary review proceedings remain. See R.J. Reynolds v. Hall, 67 So. 3d 1084 (Fla. 1st DCA 2011). The bonding process created by the Legislature basically allows Engle-related defendants to obtain a continuous stay until the entire appellate and discretionary review process is completed, consistent with the description in the title of the act, "prescribing the security necessary to stay execution of judgments pending appeal." 2009 Fla. Laws 2009-188. We recognized in Hall that Reynolds could receive the benefit of an automatic stay by posting the requisite bond: "upon posting a bond or other security in accordance with the statute, a signatory to the FSA is entitled to an automatic stay of the judgment in any civil case brought by or on behalf of a person who was a member of a decertified class action." Hall, 67 So. 3d at 1089. Given the steps that Reynolds has already taken to invoke its rights to seek further review, increasing its bond and seeking to confirm the stay below, we

9

conclude that it is presently exercising its right to seek United States Supreme Court review for purposes of § 569.23(3)(b)1, even if it hasn't yet filed a petition.

Finally, § 569.23(3)(c) supports entry of a stay of execution because it defines when a judgment is "final" for purposes of a proceeding against the bond. It says that "[f]or purposes of this subsection, a judgment is 'final' following the completion of all appeals or discretionary appellate reviews, including reviews by the United States Supreme Court." § 569.23(3)(c), Fla. Stat. For this reason, too, the judgment entered in favor of Ms. Sikes cannot be considered final for purposes of subsection (3), until the United States Supreme Court review process runs its course.

## III.

For all of these reasons, Reynolds is entitled to the automatic stay provided in § 569.23(3)(b)1 until the United States Supreme Court completes review, or the period for filing a certiorari petition expires. We reverse the trial court's order denying the automatic stay and remand for entry of an automatic stay of execution of the judgment in accordance with the foregoing, and § 569.23(3)(b)1.

REVERSED AND REMANDED.

WINOKUR, J., CONCURS.  BILBREY, J., CONCURS IN PART AND DISSENTS IN PART WITH OPINION.

BILBREY, J., concurring in part and dissenting in part.

Judge Osterhaus' opinion grants Reynolds' Emergency Motion for Stay of Execution. I believe based on the plain language of section 569.23, Florida Statutes, we should dissolve our stay of execution as to all Reynolds assets except for the $5,523,329 bond which is currently in place.

Section 569.23(3)(a)1, Florida Statutes, stays the execution of a judgment against a defendant who was party to the Florida tobacco settlement "during the pendency of all appeals or discretionary appellate review of such judgment in Florida courts." Reynolds was a party to the Florida tobacco settlement and was properly entitled to the stay while it undertook appeals in the Florida courts. See R.J. Reynolds v. Hall, 67 So. 3d 1084 (Fla. 1st DCA 2011) (explaining the history of § 569.23, Fla. Stat.). Reynolds' entitlement to a stay under section 569.23(3)(a)1 ended in February 2016 when the Florida Supreme Court declined to exercise jurisdiction over Reynolds' appeal from our Court.

Reynolds argues that section 569.23(3)(b)1, Florida Statutes, provides it the benefit of a stay while Reynolds "exercises its right to seek discretionary appellate review outside of Florida courts, including a review by the United States Supreme Court." If Reynolds had filed a petition for writ of certiorari in the United States Supreme Court, I would agree that it would be entitled to a stay of execution on the judgment until the proceedings there were final. But the majority seems to believe

11

that "exercises its right" includes Reynolds contemplating the exercise of its right or taking action in preparation for exercising its right, even though nothing has been filed in the United States Supreme Court. I respectfully disagree and think that "exercises" requires some affirmative action, not the mere contemplation of undertaking an action or taking steps in preparation of undertaking an action.

As has been repeatedly stated, "[w]hen a statute is clear, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." State v. Burris, 875 So. 2d 408, 410 (Fla. 2004) (citations omitted). Black's Law Dictionary (10th ed. 2014) defines exercise as, "To make use of; to put into action." I respectfully submit that the majority opinion gives a strained meaning to the word exercise, not the plain meaning we are required to use. Reynolds has not made use of its right to seek to have the United States Supreme Court overturn our decision — it has not put its right into action.

To "exercise a right" requires taking action to enforce the right.[1] Reynolds certainly could take action to enforce its right to seek review from the United States Supreme Court, but so far has chosen not to.[2]

---

[1] In my Panhandle vernacular, if I am "fixing to go to the store" I have not yet gone to the store. If I am considering going to the gym or if I am buying exercise equipment, I am not exercising.

[2] United States Supreme Court Rule 13 and 21 U.S.C. § 2010(c) give a party 90 days to file a petition for writ of certiorari and allow a party to seek a 60 day extension to file. So the majority would potentially allow Reynolds up to a five month stay of execution even if Reynolds never actually exercises its right to seek review.

Reynolds' action in increasing the bond is not an exercise of its right to seek review. Instead I would consider the increased bond as action in preparation of exercising its right. The mere act of increasing its bond does nothing to seek review and no relief can be granted to Reynolds by the United States Supreme Court just because it increased the bond.

If Reynolds intends to file a petition for writ of certiorari before the United States Supreme Court, it does not have to wait to exercise its right to seek a stay. Even prior to filing a petition, Reynolds could seek a stay from the United States Supreme Court pursuant to United States Supreme Court Rule 23 and 28 U.S.C. § 2101(f). Justice Thomas, as circuit justice for the United States Eleventh Circuit, could grant a stay based on Reynolds expressing an intent to file a petition for writ of certiorari. See Barnes v. E-Sys., Inc. Group Hosp. Med. & Surgical Ins. Plan, 501 U.S. 1301 (1991) (Scalia, J., in chambers).[3]

---

[3] Of course to be entitled to a stay from the United States Supreme Court, Reynolds would have to demonstrate "a reasonable probability that certiorari will be granted (or probable jurisdiction noted), a significant possibility that the judgment below will be reversed, and a likelihood of irreparable harm (assuming the correctness of the applicant's position) if the judgment is not stayed." Id. at 1302; see also Philip Morris USA Inc. v. Scott, 131 S. Ct. 1 (2010) (Scalia, J., in chambers). Reynolds has not alleged any basis for the United States Supreme Court to exercise certiorari jurisdiction, much less that it meets any of these requirements. See United States Supreme Court Rule 10; 28 U.S.C. § 1257(a).

Finally, I agree with Judge Osterhaus that under the plain language of section 569.23(3)(c), Florida Statutes, any attempt to execute on the bond is prohibited until the judgment becomes final and that the judgment will not be final for the purposes of section 569.23(3)(c) until either the United States Supreme Court acts on a petition to that Court, or the time to file a petition for writ of certiorari to that Court has expired.

Based on the above, I would lift the stay of execution on all Reynolds' assets with the exception of the bond.  See Chapter 56, Fla. Stat.  I would maintain the stay on the bond until the judgment becomes final under section 569.23(3)(c).