ON MOTION FOR REVIEW OF STAY ORDER .
OSTERHAUS, J.
R.J. Reynolds Tobacco Company seeks review of a circuit court order denying its *492 motion to stay execution of an Engle-relat-ed judgment while it considers whether to file a petition for review in the United States Supreme Court. The rules of the United States Supreme Court give petitioners ninety days from the date of the order below (until May 2, 2016 in this case) to file a petition. And Reynolds argues that section 569.23(3), Florida Statutes — a provision addressing bonding requirements in tobacco cases involving signatories to the State’s 1997 tobacco settlement agreement — entitles it to receive an automatic stay of execution of the judgment until either the United States Supreme Court reviews the case, or Reynolds decides not to file a petition. We agree that the trial court should have entered the automatic stay while Reynolds exercises its right to seek further review, and that the statute has suspended the finality of the judgment for purposes of execution until all reviews are completed, “including reviews by the Florida Supreme Court.!’ § 569.23(3)(b) & (c), Fla. Stat.
I.
As a member of the class approved- by Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006), appellee Ms. Janice L. Sikes, as personal representative of the estate of Jimmie Wayne Sikes, obtained a $5.5 million judgment in state court against Reynolds in June 2013. Reynolds appealed and posted a $5 million bond as required by the statute to receive an automatic stay of execution during its appeals to this court and the Florida Supreme Court. See § 569.23(3)(a)l, Fla. Stat. These state appeals ran their course when the Florida Supreme Court declined jurisdiction on February 2, 2016.
At that point, the parties began disputing the parameters under which the stay of execution could remain in place under § 569.23(3), while Reynolds considered filing for .United States Supreme Court review. Three days after.the Florida Supreme Court, denied review of Reynolds’ state court appeal, Ms. Sikes’ counsel told Reynolds that the-judgment was “now subject to execution” and that, she intended to execute on the judgment unless Reynolds filed a petition for review in the United States Supreme Court within ten days. Ms. Sikes offered'to voluntarily refrain from executing if Reynolds filed a motion contesting the stay issue before February 15, 2016. Reynolds then filed a motion under § 569.23(3)(b), Florida Statutes, to confirm the automatic stay in the trial court. Reynolds also increased its bond to more than $5.5 million as required to stay execution while seeking United States Supreme Court review. See § 569.23(3)(b)2, Fla. Stat. But after a hearing on the motion, the trial court denied the automatic stay. It agreed .with Ms. Sikes that Reynolds could avoid execution of the judgment only by immediately filing a petition for writ of certiorari in the United States Supreme Court. Reynolds then filed an emergency motion for stay in this court, which we treat as seeking review of the trial court’s denial of a stay pursuant to rule 9.310(f), Florida Rules of Appellate Procedure, See Lampert-Sacher v. Sachet, 120 So.3d 667, 668 (Fla. 1st DCA 2013).
II.
Whether an- automatic stay must be entered under the circumstances presented in this case presents a question of law that we review de novo; Section 569.23(3) sets forth the terms by which tobacco settlement signatories like Reynolds can stay the execution of Engle-related judgments. See R.J. Reynolds Tobacco Co. v. Hall, 67 So.3d 1084, 1087-89 (Fla. 1st DCA 2011) (detailing the history and purpose underlying § 569.23). For both state and federal appeals and reviews, appellants can trigger a stay after satisfying specific, statute- *493 defined bonding requirements. Paragraph (3)(a)l addresses post-trial appeals or reviews in state court by providing that:
the trial courts shall automatically stay the execution of any judgment in any such actions during the pendency of all appeals or discretionary appellate re-' views of such judgments in Florida courts, upon provision of security as required in this paragraph. ■
A parallel requirement in paragraph (3)(b)l applies to appeals or reviews outside of Florida’s courts, “including a review by the United States Supreme Court”:
if there is no appeal or discretionary appellate review pending in a Florida court and an appellant exercises its right to seek discretionary appellate review outside of Florida courts, including a review by the United States Supreme Court, the trial court shall automatically stay the' execution of the judgment in any such action during the pendency of the appeal, upon provision of security as required in this paragraph.
(Emphasis added). Section 569.23(3)(c) follows up on these provisions by protecting the bond from a plaintiffs claims until thirty days after completion of all appeals or reviews:
A claim may not be made against the security provided by an appellant unless an appellant fails to pay a judgment in a case covered by this subsection within 30 days after the judgment.becomes final. For purposes of this subsection,, a judgment is “final” following the completion of all appeals or discretionary appellate reviews, including reviews by the United States Supreme Court.
(Emphasis added.).
The central question in this case is what act is required under § 569.23(3)(b)l for an appellant to demonstrate that it is “ex-ercis[ing] its right to seek ... review by the United States Supreme Court,” thus qualifying to receive the automatic stay. Trial courts have answered the question in different ways, but it’s a novel appellate issue. According to Ms. Sikes and the trial court’s order, the statute permits execution on the judgment right away until Reynolds actually files a petition for writ of certiorari in the United States Supreme Court. Hence, she contacted Reynolds three days after the Florida Supreme Court denied review seeking to execute. Her interpretation reads gaps into § 569.23(3)’s bonding and stay regime, so that when a court reaches a result, and prior to the filing of a notice of appeal or review in the next court, a plaintiff can quickly move to execute on the judgment. For appellants seeking further review, and to retain the stay’s protection, her interpretation strips the time normally allowed under the rules to file an appeal or review petition — typically 30 days in state court and 90 days in the United States Supreme Court. . And it precipitates a million-dollar race to the sheriffs office in cases like this one, wherein an appellee can rush to execute on a judgment before the appellant can get its petition filed in Washington, D.C..
Underlying Ms. Sikes’ argument is a fairness argument that Reynolds should not receive the benefit of 90-day 'Stay under United States Supreme Court rules for filing a petition if it does not ultimately file a petition. But in this case, we recognize that Reynolds has taken steps prescribed in the statute demonstrating that it is exercising its right to seek further review. First, Reynolds has satisfied the statute’s bonding requirement for seeking United States Supreme Court review. Just as Reynolds previously posted a $5 million supersedeas bond into the registry of the Florida Supreme Court in order to stay execution while taking state court appeals, *494 see § 569;23(3)(a)2, :it has now increased the amount of the bond to $5.5 million as required in § 569.23(3)(b)2 to extend thé stay pending review by the United States Supreme Court. Reynolds added to the bond after the Florida Supreme Court’s decision, setting it at the full amount of the judgment as required by the statute. The only reasonable' interpretation of its decision to increase the bond to the exact amount, required for seeking further review is that it was exercising its right- to seek further review in the United States Supreme Court under § 569.23(3)(b)l.
Second, Reynolds confirmed that it was exercising its right to seek further review by asking the trial court to confirm the automatic stay. It told the trial court at a héaring held just 17 days after the Florida Supreme Court’s decision denying review that it was considering filing a petition. The rules afford a ninety-day period within which Reynolds will have to make its final decision on filing a petition. And' while Reynolds’ ultimate decision isn’t yet known, what we do know is that Reynolds has already taken steps short of filing the petition demonstrating that it is exercising its right to seek further review. For now, it has done all that is required to trigger the automatic stay.
Reynolds didn’t also need to file a petition instantaneously in the United- States Supreme Court in order to protect its $5.5 million bond and other assets from immediate execution. We do not interpret “exercises” in the statute in the same way as Ms. Sikes does in arguing that Reynolds must “simply file a petition for certiorari once state appellate review ends” to maintain the stay. In fact, filing a petition for writ of certiorari in the United States Supreme Court is not very simple. It’s not like, for instance, filing a bare'bones, two- or three-sentence notice of appeal in a state court. Rather, exercising the. right to seek United States Supreme Court review involves demanding work even before the petition gets filed. See Sup.Ct. R. 10, 12-14, 33, & -34. Chief among these requirements is that the petition must state a comprehensive, effective argument right from the start.- The rules state that a petition must include “[a]ll contentions in support of the petition” and “will be granted only for compelling reasons.” Id. R. 10, 14. The format for .filing in the United States Supreme Court adds to the complexity. Petitions must be drafted, printed, .and bound in a specific, high-quality format, accompanied by an appendix containing all the opinions, orders, findings of fact, conclusions of law entered in the case by a court or agency, and any other relevant opinions, orders, etc. in the very same format. Id. R. 33, 34. The rules of the United States Supreme Court give petitioners 90 days to complete the work reflecting the challenge of weighing whether any issues emanating from a previous decision merit high court review, reducing issues into a-compelling argument worthy of the court’s exercise of discretion, conforming a draft petition and all other required documents to the format required by the court for printing and binding, and, finally, filing the petition. Id. R. 13. The rule's warn would-be petitioners that rash work will sound the death knell; See Id. R. 14(i)4 (“The failure of a petitioner'to present'with ' accuracy, brevity, and clarity whatever is essential to ready and adequate understanding of> the points requiring consideration is sufficient reason for the Court to deny a petition.”). These filing requirements belie the short shrift Appellant’s argument gives to “simply” filing a petition in the United States Supreme Court. They also reveal that exercising the right to seek Supreme Court review involves a process that originates long before the petition actually gets filed. It-doesn’t-make sense that the Legislature *495 intended to pressure defendants into forsaking the usual certiorari period by rushing to compile a hasty petition in a fraction of the time allowed by the United States Supreme Court. And that Reynolds’was still considering whether to file a petition and hadn’t yet made a final decision only 17 days into the 90-day period isn’t particularly remarkable.
Adopting Ms. Sikes’ interpretation of “exercises” would also thwart the statute’s detailed provision bonding and stay regime, We’ve discussed before the history and significant state purpose underlying the adoption of § 569.23(3)’s regime, which prevents the disruptive effect of adverse judgments while appeals and discretionary review proceedings remain. See R.J. Reynolds v. Hall, 67 So.3d 1084 (Fla. 1st DCA 2011). The bonding process created by the Legislature basically allows Engle-related defendants to obtain a continuous stay until the entire appellate and discretionary review process is completed, consistent' with the description in the title of the act, “prescribing the security necessary to stay execution of judgménts pending appeal.” 2009 Fla. Laws 2009-188. We recognized in Hall that- Reynolds could receive the benefit of an automatic stay by posting the requisite bond: “upon posting a bond or other Security in accordance with the statute, a signatory to the FSA is entitled to an automatic stay of the judgment in any civil case brought by or on behalf of a person who was a member of a decertified class action.” Hall, 67 So.3d at 1089. Given the steps that Reynolds has already taken to invoke its rights to seek further review, increasing its bond and seeking to confirm the stay below, we conclude that it is presently exercising its right to seek United-" States Supreme Court review for purposes of § 569.23(3)(b)l, even if it hasn’t yet filed a petition.
Finally, § 569.23(3)(c) supports entry of a stay of execution because it defines when a judgment is “final” for purposes of a proceeding against the bond; It’says that “[f]or purposes of this subsection, a judgment is ‘final’ following the completion of all appeals or discretionary appellate reviews, including reviews by the United States 'Supreme Court.” § 569.23(3)(c), Fla. Stat." For this reason, too, the judgment entered in favor of Ms. Sikes cannot be considered final for purposes of subsection (3), until the United States Supreme Court review process runs its course.
III.
For-all of these reasons, Reynolds is entitled to the automatic stay provided in § 569.23(3)(b)l until the United States Supreme Court completes review, or the period for filing a- certiorari petition expires. We reverse the trial court’s order denying the automatic stay and remand for entry of an automatic stay of execution of the judgment to accordance with the foregoing, and § 569.23(3)(b)l.
REVERSED AND REMANDED.
WINOKUR, J., concurs.
BILBREY, J., concurs in part and dissents in part with opinion.